UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA

    Plaintiff/Respondent,

                               CASE NO. 2:07-CR-20312

v.                                   2:08-CV-15311

                              JUDGE PAUL D. BORMAN

RICHARD CARRASCO,            MAGISTRATE JUDGE PAUL J. KOMIVES

    Defendant/Movant.
                            /

**REPORT AND RECOMMENDATION**

I.    <u>RECOMMENDATION</u>: The Court should deny defendant's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.

II.    <u>REPORT</u>:

A.    *Procedural Background*

Defendant/movant Richard Carrasco is a federal prisoner, currently confined at the Federal Correctional Institution Petersburg-Medium, in Petersburg, Virginia. On June 13, 2007, defendant was charged in a four-count indictment filed in this Court with coercion and enticement of an individual under 16 years of age to engage in sexual activity, 18 U.S.C. § 2422(b); travel with intent to engage in illicit sexual contact, 18 U.S.C. § 2423(b); transportation or shipment of child pornography, 18 U.S.C. § 2252A(a)(1); and possession of child pornography, 18 U.S.C. § 2252A(a)(5)(B). On December 12, 2007, defendant pleaded guilty to Counts 1 and 4, pursuant to a Rule 11 Plea Agreement. As set forth in the Rule 11 Agreement, the factual basis for the plea was as follows:

> From on or about February through April of 2007, in the Eastern District of Michigan, Southern Division, and elsewhere, defendant RICHARD CARRASCO, claiming to be a 19 year old male, engaged in numerous on-line discussions with a 14 year old girl whom he had met on the internet. Although CARRASCO was originally told the victim was 18 years of age, he later learned that she was 14 and continued his on line relationship with her. As a result of their discussions and developing on line relationship, RICHARD CARRASCO sent a pre-programmed cell phone to the girl so that she could speak with him in person.
>
> In April of 2007 CARRASCO traveled to Michigan from Texas to meet the girl and discuss their plans to move to Texas together. They engaged in sexual intercourse on April 27, 2007 at her home and the Highlander Motel where CARRASCO had rented a room. When CARRASCO had traveled to Michigan from Texas, he brought a computer on which he had saved numerous images of child pornography that he had obtained via the internet. He was in possession of those images at the time of his arrest.
>
> Subsequent to his arrest, CARRASCO's computer was searched by the Oakland County Sheriff's Department, who located in excess of 600 images and movies depicting child sexual exploitation and pornographic images and movies of real children. CARRASCO remained in possession of all of the images at the time of his arrest on May 1, 2007.

Rule 11 Plea Agreement, § 1(C), at 3-4. On May 28, 2008, the Court sentenced defendant to a term of 180 months' imprisonment on Count 1 and to a concurrent term of 120 months' imprisonment on Count 4, to be followed by a five year term of supervised release.

On December 29, 2008, defendant filed this motion to vacate, correct, or set aside his sentence pursuant to 28 U.S.C. § 2255. Defendant raises three related claims as grounds for relief: (1) illegal search; (2) ineffective assistance of counsel relating to the search; and (3) newly discovered evidence regarding the legality of the search. The government filed a response on May 4, 2009, arguing that petitioner's claims are without merit. For the reasons that follow, the Court should deny defendant's motion.

B.  *Analysis*

  1.  *Background Relating to the Fourth Amendment Issue*

On May 1, 2007, an Amber alert was issued concerning the victim. On that date, officers

from the Oakland County Sheriff's Department received information that the missing girl and an adult male were located at the Highlander Motel in Waterford Township. At about 4:00 p.m., Sheriff's deputies arrived at the hotel to investigate, and were directed to Room 38. The deputies knocked on the door, and defendant answered. Defendant was arrested, handcuffed, and placed in custody. The deputies entered the room to retrieve the victim, who did not wish to exit, and to conduct a protective sweep for firearms. At approximately 6:25 p.m., defendant consented to a search of the room. The deputies seized firearms and computer equipment, the later of which contained the photographs forming the basis of Count 4 of the Indictment.

On August 30, 2007, defendant, through counsel, filed a motion to suppress the evidence seized from his motel room. In this motion, defendant argued that (1) the deputies searched his room and seized evidence prior to obtaining his consent; and (2) in any event, the initial entry into the room was illegal and the taint from the illegal entry had not dissipated at the time defendant gave his consent. As argued by defendant in his brief:

> . . . . [T]he Oakland County Sheriff's Department effectuated a warrantless entry of the motel room **subsequent to** Defendant having succumbed to lawful authority and been arrested. As officers entered the room without a warrant and without a valid consent at that time, the intrusion is presumptively unreasonable. Clearly, officers observed the subject computers and computer equipment during their initial entry and search, long prior to the purported consent. The evidence is believed to have been seized prior to the consent. However, even if the computers were seized following the consent, there was no reason or probable cause to seize Carrasco's computers without a warrant and the taint of the initial entry had not dissipated. In light of this "highly coercive atmosphere" it would have been futile for Mr. Carrasco – who was already in custody – to refuse consent, akin to "closing the barn door after the horse is out."

Def.'s Memo. in Supp. of Mot. to Suppress, at 4. In its response, the government argued that when defendant answered the door, the deputies asked whether anyone else was in the room, defendant indicated that his girlfriend was present. Upon receiving defendant's consent to speak with her, the

deputies entered the room to perform a welfare check on the victim. The deputies again entered the room to search for a firearm, after defendant had informed the deputies that he had a firearm in the room. Finally, the deputies entered the room to conduct a full search after defendant had consented to the search.

A hearing on defendant's motion was originally scheduled for October 11, 2007. That hearing was eventually adjourned to December 12, 2007. On that date, defendant entered his guilty plea without a hearing on his motion having been conducted. At sentencing, in the context of discussing whether defendant had obstructed justice by communicating with the victim following his arrest but prior to his plea, defense counsel explained his actions leading to the plea and subsequently uncovered evidence relating to the search:

> We had a motion hearing, Judge, and, frankly, I had no witnesses. He was in a vehicle after his arrest, and because the victim was in another vehicle and they were communicating with each other with hand signals, they moved Richard Carrasco out of view. He didn't see the search.
> Frankly, I don't know if I made a mistake in this case, but I failed to contact the victim or tried to contact the victim because the victim was a minor, because she was in counseling, because she had guardians and parents. I may have made a mistake in this case, but I elected not to contact the victim and not to subpoena the victim and make her come to court because I, like the government, are very protective of children. I have children myself. And what I did, as an attorney, I went out in the hallway and I met with the officer. I'm not sure which officer told me that. There was five or six officers here. And we all huddled in one big huddle, and they said, Mr. Epstein, scout's honor, nothing was touched until he signed that waiver. So being respectful of law enforcement officers, I advised by client we got to start talking plea, we got to start talking mitigation, we got to start preparing for sentencing because this motion to suppress is not going anywhere. And that's when we started plea negotiations.
> Now, subsequent to the plea, just because there was something nagging in my mind and I wasn't able to sleep at night, I had Mr. Gentry, through the Freedom of Information Act, order the logs of both the township police and the Oakland County sheriff and, sure enough, those officers arrived 20 minutes earlier than they represented to the government counsel. They didn't arrive at the Highlander Motel at 6:00. They arrived at 5:40. Mr. Carrasco was under arrest by 5:46. They were moving quick. These officers weren't taking their time on this Amber alert. This is

4

an important matter. He's under arrest, the victim is taken out of the motel room, and 40 minutes go by.

. . . .

And [the deputies] put [the victim] in a separate scout car. They moved him, but she sat there watching it, you know, we had a discussion. And I said to the victim, well, can you tell me what happened? Did you see the search? She says, oh, yeah. I had nothing to do but watch it, I'm in the back seat of a scout car by myself, they wouldn't even let me get out to go to the bathroom, and I was watching them carting bags and bags of stuff out of that room, constantly over – as soon as – after they put me in the car. Now she was gone, en route, by like 6:00 – I forget the time I put in there, 6:40 something, 6:30 something. He signed the waiver at 6:25, about 12 minutes before they took her away. She's sitting there watching them carting all this stuff out of that room. I would bet – I'm not a betting man, but I would bet a lot of money on the fact that those officers searched that motel room, took out all the computers, all that stuff in bags and then had him sign the consent. That's what my investigator believes who's been a law enforcement officer for 25 years.

Sentence Tr., at 26-28.

1. *Fourth Amendment Claim*

To the extent that petitioner raises an independent Fourth Amendment claim as a basis for § 2255 relief, the claim is not cognizable. "It is well-settled that an unconditional guilty plea constitutes a waiver of the right to appeal all nonjurisdictional antecedent rulings and cures all antecedent constitutional defects." *United States v. Lopez-Armenta*, 400 F.3d 1173, 1175 (9th Cir. 2005). As the Supreme Court has explained:

> A guilty plea represents a break in the chain of events which had preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.

*Tollett v. Henderson*, 411 U.S. 258, 267 (1973). Thus, petitioner's plea constitutes a waiver of his Fourth Amendment claims. *See United States v. Villegas*, 388 F.3d 312, 322 (7th Cir. 2004); *United States v. Martinez-Orozco*, 52 Fed. Appx. 790, 792 (6th Cir. 2002). Accordingly, to the extent defendant is asserting an independent Fourth Amendment claim, he is not entitled to relief.

5

2.  *Ineffective Assistance of Counsel*

The crux of petitioner's claim is that counsel was ineffective for failing to properly assert his Fourth Amendment claim prior to the plea. The Sixth Amendment right to counsel and the corollary right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id*. at 687. These two components are mixed questions of law and fact. *See id*. at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id*. at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.*

With respect to the performance prong of the inquiry, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id.* at 689; *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695. "Where defense counsel's failure to litigate a Fourth

Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *See Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986).

Here, defendant cannot show that counsel's performance was constitutionally deficient. Counsel filed a motion to suppress the evidence seized from the motel room, arguing both that the police had searched the room prior to defendant's consent and that, in any even, petitioner's consent was invalid in light of the coercive nature of the officer's actions prior to obtaining consent. At the time of the hearing, however, counsel had no evidence to support defendant's claims. It was undisputed that defendant had been removed from the room and placed in a police car, and did not have a view of the room. Thus, at a hearing on defendant's motion the only evidence relating to the nature and timing of the search would have come from the officers, and there is no indication that the testimony of the officers would have supported defendant's claims regarding the search. Thus, counsel was not unreasonable in declining to press forward with what would have been, at that point in time, a frivolous motion to suppress.

Defendant contends that counsel was ineffective in failing to interview the victim–who could have supported his claims regarding the search–and presumably for failing to call her as a witness at the hearing on his motion to suppress. Defendant, however, can show neither that counsel's performance with respect to the victim was deficient nor that there is a reasonably probability that his motion to suppress would have been granted had counsel called the victim as a witness at the suppression hearing. At the time of the pretrial proceedings, the victim, who was 14 years old, was undergoing counseling in part because of the events involving defendant. Counsel could have

reasonably concluded that the possibility that the victim would support defendant was so remote as to not justify him in subjecting her, a young girl, to the further trauma involved in interviewing her and presenting her as a witness. *Cf. Gillette v. Tansy*, 17 F.3d 308, 312 (10th Cir. 1994) (noting that "cross-examination of the young victim in this case, who was fifteen at the time of trial, was a very delicate and difficult matter."); *Santos v. Greiner*, No. 99 Civ. 1545, 1999 WL 756473, at *9 (S.D.N.Y. Sept. 24, 1999) (examination of young "rape victims is a particularly delicate matter of trial strategy.").

Moreover, defendant cannot show a reasonable probability that his motion to suppress would have been granted had counsel called the victim to testify. In the first place, it is doubtful that the victim's testimony regarding the search would have been credible. During the pretrial period, the victim wrote defendant a number of letters in which she referred to herself as defendant's fiancé, expressed her love for him, and promised to wait for him while he is in prison. *See* Def.'s Sentencing Memo., Ex. D. Further, during October and November, 2007, prior to the taking of the plea, the victim and defendant engaged in a number of telephone conversations which were recorded by prison authorities. During these calls, defendant encouraged the victim to change her story to support him and to write letters on his behalf, as well as to "play their game" with him so that he could get out of prison. The victim indicated that she would change her story, and that she told her social worker what defendant had told her to say to the social worker. *See* Gov't's Amended Sentencing Memo., at 6-10. In light of the victim's expressed love for defendant and desire to see him out of prison, it is doubtful that the Court would have given much credence to her testimony concerning the circumstances of the search. It is certainly not reasonably probable that the Court would have credited her testimony.

Further, as proffered by defense counsel at sentencing, the victim's testimony would have only partially supported defendant's claim. The victim told counsel that she witnessed the police taking stuff out of the room while she was in a police car. However, as conceded by counsel, the police records indicate that there was a window of time between defendant's granting of consent to search and the time the victim was transported from the scene in which the officer's could have searched the room. Thus, the victim's proffered testimony did not establish that the police in fact searched the motel room and seized items from the room prior to the time defendant gave his consent. In light of the only partially supportive nature of the victim's proffered testimony and her interest in seeing defendant escape the charges against him, there is not a reasonably probability that defendant's motion to suppress would have been granted had counsel interviewed the victim and presented her testimony at a suppression hearing. Thus, even if defendant could show that counsel's performance in this regard was constitutionally deficient–which, as explained above, he cannot do–he has failed to show that he was prejudiced by counsel's allegedly deficient performance. Accordingly, the Court should conclude that defendant is not entitled to § 2255 relief.

    3.    *Newly Discovered Evidence*

Finally, defendant contends that he is entitled to relief on the basis of newly discovered evidence. Specifically, he points to the proffered statement of the victim regarding the timing of the search. As explained above, however, defendant's allegedly new evidence fails to establish either that his Fourth Amendment rights were violated or that counsel was ineffective in his handling of the Fourth Amendment issue. Thus, the new evidence does not support defendant's constitutional claims. And absent support for a constitutional claim, the existence of newly discovered evidence alone provides no basis for § 2255 relief. *See Ruiz v. United States*, 221 F. Supp. 2d 66, 72 (D.

Mass. 2002) ("Where a claim for relief based on newly discovered evidence is based on actual innocence, rather than new evidence of a constitutional violation, the claim is not cognizable under § 2255 and, properly construed, is a Rule 33 motion."), *aff'd*, 339 F.3d 39 (1st Cir. 2003).[1]

C.  *Recommendation Regarding Certificate of Appealability*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a defendant may not appeal a denial of a motion to vacate brought under § 2255 unless a judge issues a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1)(B). The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000). Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893

---

[1] Here, a motion for new trial based on newly discovered evidence pursuant to FED. R. CRIM. P. 33 is not available to defendant, because by its terms Rule 33 "cannot be invoked to undermine a conviction predicated upon a guilty plea." *United States v. Graciani*, 61 F.3d 70, 78 (1st Cir. 1995), *cited with approval by United States v. Gilliam*, No. 02-6163, 2003 WL 22435662, at *2 (6th Cir. Oct. 23, 2003).

n.4)); *accord Slack*, 529 U.S. at 483-84. Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable." *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2255 Proceedings for the United States District Courts, 28 U.S.C. foll. § 2255, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2255. The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue." FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory committee note, 2009 amendments. In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

2. *Analysis*

If the Court accepts my recommendation regarding the merits of defendant's § 2255 motion, the Court should also deny defendant a certificate of appealability. It is clearly beyond debate that defendant's guilty plea waives any substantive challenge to the search antecedent to his plea, and that defendant's newly discovered evidence does not alone provide a basis for habeas relief. With respect to the ineffective assistance of counsel claim that is the crux of defendant's motion, in light of the circumstances confronting counsel at the time of the pretrial proceedings it is not reasonably

11

debatable that counsel's performance was constitutionally adequate, for the reasons explained above. Likewise, for the reasons explained above, in light of the victim's interest in helping defendant avoid imprisonment and the only partially supportive nature of her proffered testimony, the conclusion that defendant has failed to show a reasonable probability that his motion to suppress would have been granted had counsel presented the victim's testimony is not reasonably debatable. Accordingly, the Court should conclude that defendant is not entitled to a certificate of appealability.

D.   *Conclusion*

In view of the foregoing, the Court should conclude that defendant has not established his entitlement to relief under § 2255 because his claims are either without merit or not cognizable. Accordingly, the Court should deny defendant's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. The Court should also deny defendant a certificate of appealability.

III.   <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                                  s/Paul J. Komives
                                                  PAUL J. KOMIVES
                                                  UNITED STATES MAGISTRATE JUDGE

Dated: 4/19/10

> The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and by electronic means or U.S. Mail on April 19, 2010.
>
>                                 s/Eddrey Butts
>                                 Case Manager